OPINION.
{¶ 1} Shelley Evans-Marshall was hired as a high school English teacher by the Tipp City Exempted Village School Board ("Board") in 2000. After her first year with the school, her contract was renewed for the 2001-2002 school year. Late in the 2001-2002 school year, the school's principal and the school district's superintendent recommended that Evans-Marshall's contract not be renewed.
 {¶ 2} On March 25, 2002, the Board voted unanimously to follow the recommendation, and not renew Evans-Marshall's contract. In response to Evans-Marshall's written request for the reasons for the non renewal, on April 9, 2002, the Board issued a letter explaining that its decision was based on her lack of teamwork and the difficulties she had communicating with her department chairs and her principal.
 {¶ 3} Evans-Marshall demanded a public hearing on the subject and circumstances that lead to the Board's decision not to renew her contract. A public hearing was held on May 13, 2002. At the hearing, Evans-Marshall, the Superintendent and all five board members were present. The Board and Evans-Marshall were both represented by counsel. The Board presented two witnesses, Charles Wray, the school principal, and John T. Zigler, the superintendent. Evans-Marshall's only witness was herself. At the hearing, both sides presented exhibits and all witnesses were subjected to cross examination. At the conclusion of the hearing, the Board voted to uphold its previous decision not to renew Evan-Marshall's contract.
 {¶ 4} Evans-Marshall appealed to the trial court from the Board's decision, arguing that she had not been evaluated in accordance with the criteria adopted by the Board, and that the Board failed to comply with the procedures in R.C. 3319.111. The trial court affirmed the Board's decision. Evans-Marshall filed a timely notice of appeal.
 FIRST ASSIGNMENT OF ERROR {¶ 5} "The May 13, 2002 hearing was a sham and did not meet the requirements of Section 3319.11(G)."
 {¶ 6} R.C. 3319.11(G)(7) states that "[a] teacher may appeal an order affirming the intention of a board not to re-employ the teacher to the court of common pleas . . . on the grounds that the board has not complied with section 3319.11 or 3319.111 of the Revised Code." However, appeals pursuant to R.C. 3319.111 are limited to a determination of procedural errors. A court can order a teacher to be re-employed only if it finds that a board of education has failed to evaluate a teacher in accordance with R.C. 3319.111, or has failed to provide a teacher with timely notice of nonrenewal pursuant to R.C. 3319.11(B), (C)(3), (D)(4) or (E). The section further clearly states that the determination of whether or not to reemploy a teacher is at the board's discretion and not a proper subject of judicial review.
 {¶ 7} R.C. 3319.11(G)(1)-(7) sets forth the procedure followed by a school district when it decides not to renew the contract of a limited contract teacher. "The hearing provided teachers under limited contracts pursuant to R.C. 3319.11(G)(3), (4) and (5) necessarily includes the presentation of evidence, confrontation and examination of witnesses and the review of the arguments of the parties." Naylor v. Cardinal LocalSchool Dist Bd. of Edn. (1994), 69 Ohio St.3d 162, paragraph 4 of syllabus.
 {¶ 8} Evans-Marshall argues, as she did in the trial court, that the Board's proceedings failed to comply with the requirements imposed inNaylor because the Board did not review the arguments of the parties. She bases her claim on the fact that, when the proceedings concluded, one Board member read from a prepared statement adopting the Superintendent's recommendation to not renew Evans-Marshall's contract.
 {¶ 9} The fact that a written statement of findings and conclusions the Board made was prepared in advance doesn't necessarily show that its members didn't consider Evans-Marshall's arguments opposing the Superintendent's recommendation. Even though a statement had been prepared, the Board had an opportunity to put it aside based on the evidence and arguments it heard. The Board had yet a further opportunity to reflect on its decision before it issued a subsequent written decision pursuant to R.C. 3319.11(G)(6). Unlike Naylor, where a board refused to hear any evidence at all, these circumstances preserved the Board's opportunity to do what it was required by law to do.
 {¶ 10} Evans-Marshall also argues that the May 13, 2002 hearing was a sham because the Superintendent and the Board had already made the decision not to renew Evans-Marshall's contract prior to the hearing. To support this, she points to the deposition testimony of Patricia Wampler, a long time Board member. Wampler testified that the Board always deferred to the Superintendent on personnel matters. Further, Evans-Marshall points to the fact that, in 27 years, the Board never declined to adopt the recommendation of its superintendent. She argues that this shows that the Board had made its decision not to renew her contract prior to the hearing. This, she argues, offends the traditional notions of fairness and the dictates of R.C. 3319(G).
 {¶ 11} The trial court found that the evidence was uncontradicted that the Board made its decision to not renew Evans-Marshall's contract at the May 13, 2002 hearing. It found no evidence to support Evans-Marshall's theory that the Board had a prearranged agreement to vote to uphold their previous decision to not renew the contract. We agree.
 {¶ 12} In a deposition, Board member, Joe Downing testified that he did not have any discussions with any other Board members about the substantive issue of renewal. He further testified that he knew of no other board members who had conversed about the substantiative issue of Evans-Marshall's non-renewal prior to her hearing. Id.
 {¶ 13} Evans-Marshall presented no evidence that the Board had already made its decision to affirm its earlier order not to renew her contract. Even though the Board had a history of deferring to the superintendent on personnel matters, that in no way shows that the Board had already made up its mind to not renew Evans-Marshall's contract to affirm its earlier decision prior to the public hearing.
 {¶ 14} The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 15} "The board failed to observe the requirements of Section3319.111 when evaluating the teacher."
 {¶ 16} R.C. 3319.111(A) provides that when a board of education enters into a limited contract with a teacher the board must evaluate that teacher in any school year in which the board may wish to declare its intention not to renew the teacher's contract. This evaluation is to be conducted at least twice in the school year in which the board may wish to declare its intention not to renew the teacher's contract. Id.
Following the evaluation, the teacher is to be provided a written evaluation. Id.
 {¶ 17} R.C. 3319.111(B) states:
 {¶ 18} "Any board of education evaluating a teacher pursuant to this section shall adopt evaluation procedures that shall be applied each time a teacher is evaluated pursuant to this section. These evaluation procedures shall include, but not be limited to:
 {¶ 19} "(1) Criteria of expected job performance in the areas of responsibility assigned to the teacher being evaluated;
 {¶ 20} "(2) Observation of the teacher being evaluated by the person conducting the evaluation on at least two occasions for not less than thirty minutes on each occasion;
 {¶ 21} "(3) A written report of the results of the evaluation that includes specific recommendations regarding any improvements needed in the performance of the teacher being evaluated and regarding the means by which the teacher may obtain assistance in making such improvements." R.C. 3319.111(B).
 {¶ 22} In accordance with R.C. 3319.111(A), Evans-Marshall was evaluated twice during the 2001-2002 school year by the school principal, Charles Wray. Each of Wray's evaluations were based upon two separate in-class observations. The written evaluation from the first two observations was presented to Evans-Marshall on January 10, 2002. The written evaluation of the second two observations was provided to Evans-Marshall on March 21, 2002.
 {¶ 23} Evans-Marshal argues that the Board failed to follow its own evaluation procedure and that it evaluated her on criteria different from those promulgated by the Board. The trial court disagreed. The trial court examined the twenty-one criteria included on the form the Board had created to evaluate teachers and found that the Board's evaluation procedure met the requirements of R.C. 3319.111. Further, it found that Evans-Marshall was evaluated in accordance with that form.
 {¶ 24} Of the twenty-one criteria on the evaluation form, on her January 10, 2002 evaluation form, Evans-Marshall was found to have performed unsatisfactory in four: "Works cooperatively with building personnel," "adequately and effectively communicates with parents," "Conveys a positive image of the school" and "Implements Board of Education and administrative policies, rules, regulations and directives as assigned." On her March 21, 2002 evaluation, she was again given unsatisfactory marks in each of the aforementioned areas as well as an unsatisfactory mark for her failure to demonstrate professional growth.
 {¶ 25} Nowhere in the Revised Code does it state that a teacher must be found to be deficient in a majority of the criteria in order for a Board to choose not to renew her contract. While the teacher has a right to be evaluated on criteria the Board adopted, the decision of whether or not to renew her contract is reserved strictly for the Board under R.C. 3319.11(G)(7).
 {¶ 26} The Board's comments at the May 13, 2002 meeting indicate that its decision not to renew Evans-Marshall's contract was based upon her refusal to communicate with the school administration and her refusal to cooperate with the administration as part of the team. The trial court found, and we agree, that these are legitimate criteria for the Board's decision not to renew Evans-Marshall's contract.
 {¶ 27} Evans-Marshall argues that even if the Board complied by evaluating her on the criteria officially adopted by the Board, it failed to meet its obligation to make specific recommendations regarding needed improvements and the means for accomplishing them.
 {¶ 28} R.C. 3319.111(B)(3) states that limited contract teachers should receive a written report documenting her evaluation. The written report must include "specific recommendations regarding any improvements needed in the performance of the teacher being evaluated and regarding the means by which the teacher may obtain assistance in making such improvements." R.C. 3319.111(B)(3). Evans-Marshall argues that her evaluations are non-specific, unhelpful and amounted to nothing more than platitudes.
 {¶ 29} We disagree. Between the two evaluations that Evans-Marshall received during the 2001-2002 school year there were eleven specific recommendations regarding improvements she should make. For each of these recommendations, Evans-Marshall was provided a means by which she could obtain assistance in making the suggested improvements.
 {¶ 30} In Thomas v. Newark Bd. of Educ. (1994), 71 Ohio St.3d 251
the Court held that R.C. 3319.111(B)(3) was satisfied when the teacher's evaluations contained only the following recommendations and means by which the teacher could seek assistance in making the suggested improvements:
 {¶ 31} "(1) "[c]onstruct more detailed lesson plans which include topics to be taught, objectives for the day, and any homework assigned"; (2) "[s]pend time each day teaching techniques of Mystery and College Writing"; and (3) "[a]ssign some of the work now being done in class as homework so you have time to cover the topics during class." The first evaluation also contained the following specific recommendations regarding the means by which the teacher in Thomas could obtain assistance in making the needed improvements: (1) "[r]eview the college writing and mystery curriculum in the graded course of study"; (2) review "availabel [sic] course outlines"; and (3) have a `discussion with your department chairman.'" Thomas v. Newark City School Dist. Bd. of Edn., atp.255.
 {¶ 32} We agree with the trial court that the recommendations that were made to Evans-Marshall were similar to those made in Thomas, and therefore compliance with R.C. 3319.111(B)(3) is shown. Further, we believe that Evans-Marshall was given the means by which she could obtain assistance to improve. For example, Evans-Marshall was advised to read specific chapters of a book entitled "Teacher Leader", she was advised to consult with the head of the Language Arts Department and the Principal before each new unit and she was given suggestions on ways she could create and maintain a system to communicate with the parents of struggling students.
 {¶ 33} Finally, Evans-Marshall argues that the Board erred because there is a lack of a nexus between the evaluations she received and the stated reasons for her non-renewal. She argues that the actual reason that she was fired had nothing to do with the reasons stated in her evaluations and the reasons given by the board, communication and teamwork problems. Instead, she argues, her contract was not renewed because of controversy caused by the reading materials she used in one of her classes.
 {¶ 34} Evans-Marshall has failed to cite any authority for the proposition that a nexus must be shown between the evaluations she received and the Board's reasons for not renewing her contract. No appeal of an order of a board may be made except as specified in R.C.3319.11(G)(7). A court's review of a board's order is wholly procedural. As we stated earlier, a court can order a teacher to be reemployed only if a board of education has failed to evaluate a teacher in accordance with R.C. 3319.111, or has failed to provide a teacher with timely notice of nonrenewal pursuant to R.C. 3319.11(B), (C)(3), (D)(4) or (E).
 {¶ 35} We have already found that Evans-Marshall was evaluated in accordance with R.C. 3319.111. Evans-Marshall does not argue that she failed to receive timely notice of her nonrenewal. R.C. 3319.11(G)(7) clearly states that the determination of whether or not to reemploy a teacher is at the board's discretion and not a proper subject of judicial review. "Although R.C. 3319.11 and 3319.111 must be construed liberally in favor of teachers . . . a court may not read into a statute a result that the language does not reasonably imply." Thomas, supra at 255-56. Because Evans-Marshall has failed to demonstrate either of the procedural defects which allow for judicial review, we must overrule this assignment of error.
 {¶ 36} Both of Evans-Marshall's assignments of error are overruled and the trial court's decision is affirmed.
FAIN, P.J. and WOLFF, J., concur.